# PETER E. WRIGHT *vs.* THE STATE OF MARYLAND.

*Constitutional Law—Prohibition of Sale of Oleomargarine—Police Power—Secondary Evidence—Indictment.*

Code, Art. 27, secs. 88, etc., prohibit the manufacture or sale of any article made in imitation of butter and not made from pure milk or cream. Defendant, a resident of this State, was indicted for selling one pound of oleomargarine, being an article in imitation of butter, not made from pure milk or cream. Upon demurrer to the indictment, *Held,* that the statute, in so far as it prohibits the sale or manufacture of oleomargarine in this State is a valid exercise of the police power designed to protect the health of the community, and since it was not shown or averred that the oleomargarine sold by the defendant was an article of commerce from another State, sold by him in the original package, the demurrer to the indictment was properly overruled..

A statute prohibiting the sale of oleomargarine by any person is not unconstitutional as abridging the privileges and immunities of the citizen, or as depriving him of his property, or as restricting the right to pursue a trade, or as creating a monopoly.

When an original paper is proved to have been thrown away as useless,. secondary evidence of its contents is admissible without direct proof that search had been made for it.

An indictment charging that the traverser was "late of A. County aforesaid," sufficiently shows that he is a resident of the State and county which was set forth in the venue.

Appeal from the Circuit Court for Allegany County (SLOAN, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE,. ROBERTS, BOYD and PEARCE, JJ.

*David J. Lewis* (with whom was *James A. McHenry*) for the appellant.

For the appellee the cause was submitted on brief by *Harry M. Clabaugh, Attorney-General.*

PEARCE, J., delivered the opinion of the Court.

The Act of 1888, ch. 312, which has been codified in sections 88, 89, 90 and 91 of Art. 27 of the Code of Public General Laws, provides in section 88 that "No person shall manufacture out of any oleaginous substance or substances, or any compound of the same, other than that produced from unadulterated milk, or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream of the same; or shall sell, or offer for sale the same, as an article of food. This provision shall not apply to pure skim milk, or cheese made from pure skim milk." Section 89, prohibits the manufacture or sale of any article, in imitation or semblance of natural butter or cheese produced from pure unadulterated milk or cream of the same, " *whether such articles be made or produced in this State or elsewhere.*" Section 90 makes it unlawful for any person to have in his possession any such article or substance, with intent to sell or offer the same for sale, for butter or cheese made from unadulterated milk or cream. Section 91 makes it unlawful for any proprietor or manager of any place of public entertainment, to keep, use, or serve, therein any such article or substance.

Under this Act, Peter E. Wright was indicted in the Circuit Court for Allegany County. The indictment contained three counts. The first count charged *a sale* as an article of food " of a certain article designed to take the place of butter produced from pure unadulterated milk or cream of the same, to wit, an article called and known as Oleomargarine." The second count charged an *offering for sale* of the same article; and the third count, both *a sale,* and an *offering for sale.* To this indictment the traverser demurred, and the Court

overruled the demurrer. The trial then proceeded before a jury; a verdict of guilty was rendered, upon which judgment was entered, and the traverser appealed. In the course of the trial, a single exception was taken to the admissibility of evidence, which will now be disposed of. The testimony of Henry Hast showed that the traverser kept a provision store in the City of Cumberland, Md., and that on April 18th, 1898 witness went to the store and asked for a pound of butter; that he received a package, in a paper wrapper, which looked and tasted like butter; and that the words, " Peter E. Wright, Oleomargarine," were printed on the wrapper; that being asked by counsel what became of the wrapper he replied that he did not know, he did not keep it; whereupon the traverser objected to witness stating what was printed on the wrapper unless the same was produced, or its loss proved; but the Court overruled the objection and allowed the question and answer. This ruling was clearly correct. The general rule of law on this subject is, that " if the instrument be destroyed or lost, the party seeking to give secondary evidence of its contents, must give some evidence that the original once existed, and must then prove its destruction positively, or at least presumptively, as by showing it has been thrown aside as useless, or he must establish its loss by proof that a search has been unsuccessfully made for it in the place or places where it was most likely to be found." *Brashears* v. *State*, 58 Md. 565. Each case must of course depend much upon its own peculiar circumstances. The sole usefulness of the paper now in question was as a wrapper or carrier of the article of food it enclosed and there was no occasion for its preservation for any purpose. When the article reached the purchaser's home, and was placed upon his table, the wrapper was naturally and properly consigned to the kitchen stove or to the garbage box. The statement that he had not kept a paper *of that character*, and that he did not know where it was, was equivalent to saying it had been thrown away as useless, and its nonproduction was legally accounted for. With this evi-

dence the proof was clear that the article was Oleomargarine, since the traverser had stamped it as such under his own name, and had offered no evidence to show that it was not what he had represented it to be.

It is also contended, in view of the decision of the Supreme Court of the United States in *Schollenberger* v. *Penn*, 171 U. S. 1, decided May 28th,1898 (and which will be hereafter considered upon the main point in this case) that if the statute in question can be maintained at all, as applied to a sale in Maryland by a citizen of Maryland, yet this indictment is bad, because that decision has imported into the statute an exception in favor of all non-residents of Maryland, and the indictment does not negative the exception. Where an exception is so incorporated with the enacting clause of a statute, that one cannot be read without the other, it is well understood that the rule of pleading requires the indictment to negative such exception; but whether this rule could be invoked in any case where the exception does not actually appear as part of the text of the statute, and where the exception is the result of judicial construction, may well be doubted. But waiving this doubt, and assuming for the moment that under the decision referred to, such an exception is imported into this statute in such manner as to require the application of the rule, this indictment would still be good; because it describes the traverser as " late of Allegany County *aforesaid,*" that is —" late of Allegany County, *in the State of Maryland,*" as shown in the venue and in the body of the indictment. The venue is " State of Maryland, Allegany County, to wit," and the averment in the body of the indictment that the traverser was " late of Allegany County *aforesaid,*" is equivalent to an averment that he was a citizen of Maryland, and such an averment negatives the possibility of his being a non-resident of Maryland.

We now come to the demurrer under which it is contended by the appellant that the Act upon which the indictment is founded is invalid, because in contravention of the Bill of Rights of Maryland, and of the provisions of the Federal Constitution. This appeal was

not orally argued in behalf of the State, and in the brief filed by the Attorney-General, he relied without argument, upon the case of *McAllister* v. *The State*, 72 Md. 390, as the law of this case. In *McAllister's case*, which arose upon the same Act which is now drawn in question, this Court did not enter into any original discussion of the principles of law involved, but reposed its decision upon the two cases of *Powell* v. *Pennsylvania*, 127 U. S. 680, and *Dent* v. *West Virginia*, 129 U. S. 114, in both of which was upheld by the Supreme Court of the United States the power of the State to preserve public health and morals and to secure its citizens against the consequences of fraud and deception. And well might this Court have relied upon these decisions, for in *Powell* v. *Pennsylvania*, JUSTICE HARLAN stated the question before the Court in the following language: "The question therefore is whether the prohibition of the manufacture out of oleaginous substances, or out of any other compound thereof, other than that produced from unadulterated milk or cream from unadulterated milk, of an article designed to take the place of butter and cheese produced from pure unadulterated milk, or cream from unadulterated milk, or the prohibition upon the manufacture of any imitation or adulterated butter or cheese, *or upon the selling or offering for sale* or having in possession with intent to sell the same as an article of food, is a lawful exercise by the State of the power to protect *by police regulations* the public health;" and the Court then proceeded to decide that the State of Pennsylvania could lawfully exercise such power. In *Eilenbecker* v. *District Court of Plymouth County*, 134 U. S. 40, JUSTICE MILLER cited and approved *Powell* v. *Pennsylvania*, stating that all the prohibitory clauses of the statute of Iowa relating to the sale of liquor, which the Court was then considering, had been held in *Powell's case* to be within the constitutional powers of the State Legislature; and in *Crutcher* v. *Kentucky*, 141 U. S. 47, JUSTICE BRADLEY also cited *Powell's case* with approval, and this too in a case where he said it could not be held "that everything

which the Legislature of a State may deem essential for the good order of society and the well-being of its citizens can be set up against the exclusive power of Congress to regulate foreign and interstate commerce." A comparison of the Pennsylvania and Maryland Statutes will show that the question thus stated and decided in *Powell* v. *Pennsylvania* is the exact question determined by this Court in *McAllister's case*, and which we are now required to review. It cannot therefore be said that in deciding *McAllister's case* we either set up any erroneous views of our own or relied upon any authority other than the highest attainable upon the matter in controversy. But, however this may be, it is now argued that we can no longer sustain *McAllister's case* upon the authority of *Powell's case*, since the decision in *Schollenberger* v. *Pennsylvania* before referred to, and to this contention we will now address ourselves.

It is contended by the appellant that the Act of 1888, chap. 312, is in contravention of that clause of the Constitution of the United States which declares that "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States;" but we think it is clear that the object of this clause is to prevent discrimination by the several States against the citizens of other States, and in this Act, there is no such discrimination whatever. The fourteenth amendment of the Constitution further provides that "no State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." Appellant's counsel do not, in terms, refer to the fourteenth amendment, but it would seem they must have had it in mind, when they said in their brief: "It should not be necessary to argue in this Court for equal commercial and industrial privileges, and we shall rather quote. The late JUDGE COOLEY in his Commentary on Constitutional Law, speaking of unequal and partial legislation, says,' Equal-

ity of rights, privileges and capacities, unquestionably should be the aim of the law. The State, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivation of rights. To forbid an individual, or a class, the right to the acquisition and enjoyment of property, in such a manner as should be permitted to the community at large, would be to deprive them of liberty, in particulars of primary importance to their pursuit of happiness.'"

But it will be obvious on reference to the title of the chapter and of the sub-division thereof in which this passage occurs, and to the context which accompanies it, that the author had reference to such unequal and partial legislation as is intended to operate upon citizens of the State enacting it, and not upon citizens of other States; and in a note to page 358 of the 6th Edition, speaking of this amendment, he says: "*Notwithstanding this section, the protection of all citzens in their privileges and immunities, and in their right to an impartial adminstration of the law is just as much the business of the States as it was before.*" Nor could so eminent an authority have said otherwise since at the time he wrote the Supreme Court of the United States had said in the *Slaughter House cases,* 16 Wallace 36, that "the privilege of exercising one's trade, upon which he depends for his support and that of his family, is a privilege of a citizen of a State, and not of the United States, and the privileges and immunities secured to the citizens of the several States, are those fundamental privileges which belong to citizens of all free governments"; and " that these privileges and immunities have no application to a citizen of the State whose laws are complained of." And in the later case of *Powell* v. *Pa.,* 127 U. S. 678, the same Court, considering a statute identical in effect—and very nearly so in language—with out Act of 1888, held it not obnoxious to the provisions of the fourteenth amendment, either as restricting the right to pursue a calling or trade, as depriving one of property without compensation, or as denying the equal protection of the law; and declared that one aggrieved thereby,

under the facts of that case, " must appeal to the legislature or the ballot box, and not to the judiciary."

It is further argued in behalf of the appellant, that the Act is invalid because it in effect grants a monopoly, and Art. 41, of the Declaration of Rights of Maryland, declares that " Monopolies are odious, contrary to the spirit of free government and the principles of commerce, and ought not to be suffered." We think, however, it will be sufficient to say in reply to this contention, that as the law prohibits all sales, no element of monopoly can by any possibility be found in such an enactment. In *United States* v. *E. C. Knight Co.,* 156 U. S. 1, MR. CHIEF JUSTICE FULLER adopts LORD COKE's definition of a monopoly, " *archaic* " though it be, as follows: " A monopoly is an institution, or allowance by the King (the State) by his grant, commission, or otherwise to any person or persons, bodies politique or corporate, of or for the sole buying, selling, making, working, or using of any thing, whereby any person or persons, bodies politique or corporate, are sought to be restrained of any freedome or liberty that they had before, or hindered in their lawful trade." To constitute a monopoly within the meaning of this definition, there must be an allowance or grant by the State, to one or several of a sole right—that is a right to the exclusion of all others than the grantee or grantees. Here is a *grant* to *none* but a *prohibition* to *all,* and if this statute is to be struck down, it cannot be done in the name of monopoly.

But it is also claimed that in *Schollenberger's case,* cited above, this very Act, which was then in force in Pennsylvania, was held by the Supreme Court to be unconstitutional as to all the world except citizens of Pennsylvania, because in violation of interstate commerce, and that thus our own Act, as to all the world except citizens of Maryland, is unconstitutional for the same reason; and that this being so, if we should hold it valid as to citizens of Maryland, though invalid as to all the rest of the world, we shall give to the statute a positive operation beyond the legislative intent and be-

yond what any one can say it would have enacted in view of the illegality claimed to be declared by the Supreme Court as to the rest of the world. But we are clear that the appellant is in error in supposing that the present case falls within the condemnation of *Schollenberger's case*. In that case, the jury found a special verdict in which the following facts among others are set out:

1st. That defendant was a citizen of Philadelphia, and the agent in that city of the Oakdale Manufacturing Company of Providence, Rhode Island, a corporation engaged in that city in the manufacture of oleomargarine and having complied with all the requirements of the Act of Congress of 1886 relating to the manufacture and sale of oleomargarine.

2nd. That defendant, as agent aforesaid, was a wholesale dealer in oleomargarine in Philadelphia, and had, as such agent, duly paid the special tax upon his said business as dealer in oleomargarine.

3rd. That before October 2, 1893, the Oakdale Manufacturing Company shipped to their agent in Philadelphia a package of oleomargarine, separate and apart from all other packages, being a tub containing forty pounds, and complying in all respects with the requirements of the Act of Congress of 1886. That said package was an original package as required by said Act, and that its form was adopted in good faith for the purposes of their trade, and not for the purpose of evading the laws of Pennsylvania.

4th. That on October 2, 1893, the defendant, while a dealer and agent as aforesaid, sold to one Anderson the said tub or package just mentioned, in the same condition in which it was shipped to and received by him.

5th. That the oleomargarine in said package was manufactured from oleaginous substance, not produced from milk or cream, and was designed to take the place of butter as an article of food.

Upon this special verdict judgment was entered for defendant by the trial Court. On appeal to the Su-

preme Court of Pennsylvania that judgment was reversed and judgment was entered for the Commonwealth, and this latter judgment was taken on writ of error to the Supreme Court of the United States, where the judgment of the Supreme Court of Pennsylvania was reversed, it being held that oleomargarine is a proper subject of commerce among the States (though it had been otherwise expressly decided in *Plumley* v. *Massachusetts*, 155 U. S. 466), and that an importer may sell oleomargarine *in original packages* to consumers as well as to wholesale dealers, notwithstanding the prohibition of a statute of the State where the sale is made, and that the exercise of this right will not be prevented by the fact that the packages are suitable for retail trade. In that case, a Federal question, arising under the commerce clause of the Federal Constitution, was directly presented to the Court, but such is not the case here. Here the question is presented upon demurrer to the indictment, and upon the face of the indictment no Federal question is presented. The case made by the indictment is a simple sale in Maryland by one citizen of Maryland to another citizen of Maryland, of an article called oleomargarine, in contravention of a statute of Maryland prohibiting any sale of such article. Whatever may be the law upon the facts before the Court in *Schollenberger's case*, there can be no question that upon this demurrer the indictment must be sustained, since even in *Schollenberger's case* the Act in question was held invalid only " to the extent that it probihils the introduction of oleomargarine from another State, and its sale in the original package as described in the special verdict." If this appellant desired to avail himself of the decision in *Schollenberger's case*, or to raise the point upon which that case was decided, he should have raised it by an appropriate plea, and thus have driven the State to a demurrer or an issue of fact upon the plea. But he did not do this. Nor in the testimony delivered, so far as disclosed by the record, was there any proof of such facts as would in any event have brought the case within the ruling in *Schollenberger's case*. There was

no evidence that the oleomargarine sold was manufactured out of the State of Maryland, or, if so manufactured, that it was shipped by the manufacturer as an article of commerce to the importer in Maryland, nor that it was sold by the defendant in the original package and unless there was proof of all these facts, the importer had no right, even under *Schollenberger's case,* to sell the article in Maryland. The testimony produced at the trial showed the sale of a single pound package in a paper wrapper, and every presumption is that such a package could not have been an original package, because of the impossibility of safe shipment in such package; and even if there were proof that the package was an original one, the presumption would be violent that it was not adopted in good faith, but for the purpose of evading the law of Maryland. *Powell's case* in 127 U. S. is identical with the present case as is shown by the statement of the exact question in that case made by JUSTICE HARLAN, and reproduced heretofore in this opinion; and JUSTICE PECKHAM, in the course of his opinion in *Schollenberger's case,* takes occasion to say: " The *Powell case* did not, and could not, involve the rights of an importer under the commerce clause. The article was manufactured and sold within the State, and the question *was one as to the police power of the State* acting upon a subject always within its jurisdiction. *The right of a State to enact laws in relation to the administration of its internal affairs is one thing, and the right of a State to prevent the introduction within its limits of an article of commerce is another and a totally different thing.*"

It being thus clear that the present case is not controlled by *Schollenberger's case,* it is unnecessary for us to consider it further and we have no hesitation in affirming the judgment of the Circuit Court.

> *Judgment affirmed with costs above and below.*

(Decided November 17th, 1898.)