*J. W. S. Cochran* for the appellant. Submitted for the appellee on brief by *D. J. Blackiston.*

---

JOHN RASCH *vs.* THE STATE OF MARYLAND.

*Unlawful Sale of Oleomargarine—Sale in Original Imported Package—Constitutional Law.*

Appeal from the Criminal Court of Baltimore (SHARP, J.) *Affirmed.*

The Court said: This appeal brings before us again the constitutionality of section 89, of Art. 27, of the Code of Public General Laws, which prohibits the sale of any article manufactured from animal fat or animal or vegetable oils in imitation or semblance of natural butter, and not produced from pure unadulterated milk, or cream from the same, being the article commonly known as oleomargarine. The

first legislation in this State upon the subject was in 1884; and the law then enacted required that every package known as oleomargarine, sold or offered for sale, should be stamped in plain Roman letters "OLEOMARGARINE," and prescribed penalties for violation of the Act. Its constitutionality was at once attacked, and it was upheld by this Court in *Pierce* v. *The State*, 63 Md. 592, as too plain to be questioned.

In 1888 a new law was enacted entitled "An Act to prevent deception in the sale of butter and cheese, and to preserve the public health," which now constitutes secs. 88, 89, 90 and 91 of the Code of Public General Laws. In *McAllister* v. *The State*, 72 Md. 390, the appellant had been convicted under sec. 90, of having in his possession, with intent to sell, a compound of animal fat, or animal or vegetable oils, colored with annotto, and so made to resemble butter, and on appeal this law was also held valid and constitutional, in accordance with the decision in *Powell* v. *Pennsylvania*, 127 U. S. 680, in which a statute practically identical with sec. 90 of our Code was held by the Supreme Court of the United States to be within the police power of the State and to be free from constitutional objection. That case was decided in 1888, and it might have been supposed that it would have set at rest for a long period the litigation of the question decided, but as was said by JUSTICE WILLIAMS, in 156 Pa. St. Rep. 206, "The profits to be derived from an unlawful traffic are much larger than those that flow from legitimate trade, provided the unlawful traffic may be pursued without serious interference from the officers of the law ; and when men deliberately determine to put money in their pockets by engaging in a business which the State has declared to be injurious to the public morals, the public health, or the public peace, and has therefore forbidden altogether, or placed under strict police regulations, they are morally certain to seek immunity for themselves and their unlawful business, by immediate flight to the sanctuary of the National Constitution, and there lay hold on the altar of interstate commerce." Nor are these vio-

lators of State law content with repeated adverse decisions
of these questions.   If defeated in their contentions to-day
and to-morrow, with a tenacity and ingenuity which extort
admiration, and is worthy of a better cause, they return the
following day, with a new presentation of the question, and
with a never-failing confidence in the efficacy of agitation.
Thus in 1894 the oleomargarine law was again brought
before the Supreme Court of the United States in *Plumley*
v. *Massachusetts*, 155 U. S. 461, one of the contentions
then being that the Massachusetts statute was repugnant to
the clause of the Constitution providing that Congress shall
have power to regulate commerce among the several States.
The Court, however, still held to its former line of deci-
sions, and the statute was held to be not repugnant to that
clause, nor obnoxious to any of the other objections urged
thereto, and both *Powell's case* and *McAllister's case* were
cited and approved by the Court.   Not daunted, however,
by this series of adverse decisions, a reconsideration of the
same question was had in the Supreme Court of 1898, in
*Schollenberger* v. *Pennsylvania*, 171 U. S. 1, in which the
same statute of Pennsylvania, which in *Powell's case* had
been declared valid, was held invalid to the extent that it
prohibits the introduction of oleomargarine from another
State, and its sale in the original package, and thus the per-
severance and determination of the oleomargarine dealers
has been at last rewarded with at least a certain measure of
success.   In the opinion of the Court, delivered by MR.
JUSTICE PECKHAM, it is said that neither *Powell's case* nor
*Plumley's case* is thereby overruled, though we should
otherwise have thought that such was the necessary conse-
quence of that decision ; and as we understand the dissent-
ing opinion of MR. JUSTICE GRAY, concurred in by MR. JUS-
TICE HARLAN, they regard the cases mentioned as over-
ruled.   We cannot agree with the opinion of the Court in
171 U. S., and if the law of *Powell's case* and *Plumley's*
*case* is not overruled, we are unable to perceive how the
constitutional exercise of the police power of the States,
which was there conceded to be effective to prohibit the

sale of oleomargarine, can be nullified as it is under the decision in the *Schollenberger case* by the provisions of the Constitution and Laws of the United States concerning interstate commerce. But it is our duty to follow that Court, and we shall do so whenever the case before us shall fall within its rulings.

In the case which we have now to decide, there were four counts in the indictment, the first under section 89, charging a sale of two pounds of oleomargarine; the second and third under the same section, charging the keeping for sale and offering for sale of the same article; and the fourth, under section 90, charging the sale of two pounds of oleomargarine colored with annotto, whereby it was made to resemble butter. To this indictment the appellant interposed a demurrer, which was overruled, whereupon the State elected to go to trial on the first count. The appellant then renewed his demurrer to the first count, which was also overruled, upon which he filed a special plea to the first count, alleging:

1st. That he sold the article as oleomargarine, the purchaser knowing it to be such.

2nd. That the article so sold is recognized by Act of Congress as an article of commerce.

3rd. That it was a wholesome and nutritious article of food, entirely free from any deleterious substance; and,

4th. That the oleomargarine sold was manufactured by R. C. Dotson of the State of Massachusetts, who had complied with all the rules and regulations of the Act of Congress.

To this plea the State demurred, and the demurrer was sustained. The appellant then submitted the case to the Court upon the plea of not guilty, and the State rested, after offering evidence to sustain the indictment, whereupon the appellant offered evidence to sustain the special plea, to the admission of which evidence the State objected, and the Court sustained the objection and excluded the evidence offered, to which ruling the appellant excepted and the verdict and judgment being against him he has appealed, alleging

error in overruling his demurrers, and excluding his prof-
fered evidence, and in sustaining the State's demurrer to his
special plea. This appeal, since the Act of 1892, ch. 506,
brings up the whole record, including the demurrers and
exceptions. *Avirett* v. *The State*, 76 Md. 516; *The State* v.
*Floto*, 81 Md. 600; and the first inquiry, therefore, is the
legal sufficiency of the indictment. The demurrer to the
whole indictment was properly overruled if any one count
was sustainable, and under *Plumley's case*, in 155 U. S.,
which the Supreme Court in *Schollenberger's case*, 171 U.
S., declared not to be thereby overruled, there can be no
pretence that the fourth count, charging a sale of oleomar-
garine colored so as to resemble butter, was not a good
count. In *People* v. *Arensberg*, 105 N. Y. 123, it was held
by the Court of Appeals—JUDGE RAPALLO delivering the
opinion—that the sale of an article known to the vendor to
be oleomargarine, to which a coloring matter not injurious
to health had been added, which was not essential to the
manufacture of the article, but resorted to solely for the
purpose of making it resemble the most valuable kind of
dairy butter, was a violation of the Act, and justified a
conviction under it; and this, although the defendant offered
it for sale, and sold it as oleomargarine. And this is so,
because the statute is aimed at the deception of the public
at large. It is not enough, therefore, to show that the par-
ticular individual named in the indictment was not deceived,
if the article sold was in imitation and semblance of but-
ter, and was calculated to deceive others who might buy it,
and who were not informed of the deception, either by their
own sagacity, or the generosity of the seller. This Judge
was the same who delivered the opinion in *The People* v.
*Marx*, 99 N. Y. 377, in which another section of the same
statute was held unconstitutional as applied to substitutes
for butter—not unwholesome and not simulated, but he dis-
tinguished the cases clearly and upheld in emphatic terms
the power of the Legislature to enact such laws as they
may deem necessary to prevent the simulated article being
put upon the market in such a form and manner as are

calculated to deceive. There was no error, therefore, in overruling the demurrer to the whole indictment.

The demurrer to the first count, upon which alone the case went to trial, presents the precise point we decided in the recent case of *Wright* v. *The State*, 88 Md. 436, no Federal question being presented therein, and for the reasons there stated, we hold this demurrer was properly overruled.

This brings us to the demurrer of the State to the special plea, and the rejection of the testimony offered by the appellant to support the plea, which will be considered together, as but one and the same point is thereby understood to be presented, namely, whether the prohibition of section 89 against the sale of oleomargarine in this State, when sold as oleomargarine, and not as butter, violates any provision of the Constitution of the United States, or of the laws of the United States in conformity therewith.

The only authoritative case to which we have been referred by the appellant, or of which we have any knowledge, under which he could hope for protection in making such sales, is the *Schollenberger case*, in 171 U. S., and we must therefore presume that the design of the special plea, and the offer of the rejected evidence, was to put upon the record facts relating to the sale, which would bring this case within its ruling ; but the plea, and the offer of testimony, obviously fall far short of accomplishing that purpose. The precise ruling in the *Schollenberger case* was, that the Pennsylvania Act was invalid to the extent that it prohibited the introduction of oleomargarine from another State, and its sale in the original package, as described in the special verdict in that case, and we do not propose to extend, by construction, the operation of that decision.

The State having in the indictment made a *prima facie* case, it was incumbent on the appellant, in order to defeat the State law, to aver in his special plea, and to embrace in his offer of testimony, every fact requisite to bring his case within the *Schollenberger case*. The State is not required to negative anything which is a matter of defence. *Wright* v. *The State, supra ; Keith* v. *The State*, 91 Ala. 9.

Assuming for the sake of argument, but without conceding, that the special plea sufficiently avers that the oleomargarine was manufactured out of the State, and that it was imported into the State by the manufacturer, and by him or his agent there sold, there is an entire absence of any averment in the plea, or in the offer of testimony, that the article was sold in the original package in which it was imported. Now, the statute of Maryland is confessedly valid, except in so far as it may interfere with the commerce between the States, and all the decisions from *Brown* v. *Maryland*, 12 Wheat. 419, down, are to the effect that the article which is the subject of commerce, is followed and protected, only so long as it preserves the form, and remains the exact subject, of importation.    *McGregor* v. *Cone*, 104 Iowa, 471.

" One who plants his feet squarely upon the police laws of the State and defies its officers to suppress or punish his forbidden trade, must show a clear legal right to take and maintain his position as a violator of the law, or suffer the penalty of the broken law."    JUSTICE WILLIAMS, in 156 Pa. St. 216.

The omission of such an averment in the plea we regard as fatal to its validity, and the demurrer to the plea was therefore properly maintained.    Its omission from the offer of testimony was equally fatal to its reception, and it was properly rejected.

It should be observed here that in the special verdict in *Schollenberger's case*, the fact was found that the form of package was adopted in good faith for the purposes of their trade, and not for the purpose of evading the laws of Pennsylvania, and we are not to be understood as conceding that a two-pound package of oleomargarine—no matter how put up —and even if in fact an original package—when sold by a local dealer to an actual consumer, would be protected, as adapted in good faith to *bona fide* interstate commerce. We find no error in any of the rulings of the Court, and the judgment will be affirmed.

Opinion by PEARCE, J., filed June 22nd, 1899.

*Edgar H. Gans* and *T. C. Ruddell*, for the appellant.

*George R. Gaither, Jr., Attorney-General*, and *Jas. Hewes*, for the appellee.