**Hirschfield v. York Board of Realtors, Inc.**

*Donn I. Cohen,* for plaintiff.

*Robert H. Griffith,* and *Michael J. Brillhart,* for defendant.

BUCKINGHAM, J., March 9, 1972.—In this action, plaintiffs allege that: (1) they are licensed real estate brokers in York County; (2) defendant's members constitute a majority of the licensed real estate brokers in York County; (3) under defendant's rules and regulations defendant maintains a multiple listing service in which only members of defendant may participate; (4) when a member of the multiple listing service acquires an exclusive listing contract for the sale of real estate, he must enter the property on a list which is circulated to other members; (5) when a sale is made by a member other than the listing broker, the fee is split; (6) nonmembers may not sell real estate listed with the multiple listing service; (7) defendant has forbidden its members to cooperate with nonmembers in making sales of real estate; (8) cooperation with other real estate brokers is an economic necessity in York County without which plaintiffs cannot engage in the real estate business, and (9) plaintiffs had applied for membership in defendant but were rejected without good cause and solely pursuant to section 2 of article IV of defendant's bylaws which provides:

"Section 2.

"(a) Part-Time Salesmen.

"(1) All active members of the York Real Estate Board are required to employ only full-time salesmen.

"(2) The term full time shall mean that the salesmen's primary employment is Real Estate and is able to serve the public during office hours of Active Member.

"(3) Active Members may, at their discretion, employ a Salesman-Trainee on part time basis for a period not to exceed six months from date of licensure

by Department of Public Instruction of the Commonwealth of Pennsylvania.

"(a) Under no circumstances shall a salesman-trainee who has served the probational six-month period, be employed as Trainee by another Active Member under like circumstances.

"(4) Salesman-Trainee is defined as individual who is engaged in employment other than Real Estate and unable to serve the public full time during office hours of Active Member.

"(Section 2 is an amendment to the By-Laws adopted May 6, 1966.)"

The complaint is divided into three counts. The first is entitled *"Restraint of Trade"* and alleges that the foregoing acts of defendant constitute an unlawful conspiracy in restraint of trade in real estate in York County and a conspiracy to monopolize the real estate industry in York County by means of a group boycott or a concerted refusal to deal with plaintiffs. The second is entitled *"Intentional Interference with Business Advantage"* and alleges that the foregoing acts of defendant constitute an intentional and unlawful interference with plaintiffs' prospective business advantage and a continuing tort. Count three is entitled "False Advertising" and alleges that pursuant to the conspiracy in restraint of trade, defendant engaged in a campaign of untrue, deceptive and misleading advertising which implies that nonmembers of the multiple listing service are unreliable, unethical or dishonest, that part-time agents employed by nonmember brokers are incompetent or not as competent as those agents of defendant's members, that defendant's agents have received training which has not been received by nonmembers' agents, that the multiple listing service has access to 48 offices with 200 full-time agents, that all of defendant's agents are full-time and that listing

cards sent to members of the multiple listing service contain all factual information about a listed property. Plaintiffs allege that all of the foregoing is untrue and constitutes a violation of the Criminal Code of Pennsylvania providing criminal penalties for untrue, false and misleading advertising as set forth in the Act of June 24, 1939, P. L. 872, sec. 857, as amended, 18 PS §4857.

Plaintiffs allege in all three counts that the acts of defendant were done intentionally, willfully and maliciously with the intention to injure or cause harm to plaintiffs in their business or business relations without right or just cause; were against the public interest and, because of these acts, plaintiffs have suffered and will continue to suffer permanent and irreparable damage, loss and harm for which they have no adequate remedy at law. They ask for a decree declaring defendant and the multiple listing service an unlawful conspiracy in restraint of trade, enjoining defendant from preventing or limiting cooperation between defendant's members and nonmembers in sales of real estate and enjoining defendant from engaging in false and misleading advertising. They also seek compensatory and punitive damages.

Defendant has filed a preliminary objection in the form of a demurrer to the complaint on the ground that none of the three counts contains a cause of action against defendant upon which relief can be granted. In considering a demurrer, every well pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, must be taken to be admitted: Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501 (1970).

Defendant, as a nonprofit corporation, has the power to adopt rules to regulate its membership, subject to the following provision of section 601 of the

Nonprofit Corporation Law of May 5, 1933, P. L. 289, art. VI, 15 PS §7601, which states:

"Membership in all nonprofit corporations shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as the articles or by-laws shall prescribe, *except that all such rules shall be reasonable, germane to the purpose or purposes of the corporation, and equally enforced as to all members of the same class.*" (Italics supplied.)

The first issue is whether defendant's rule that its members may not employ part-time salesmen is reasonable and germane to its purpose. If it is not and if it is causally connected to the alleged restraint of trade, count 1 of plaintiffs' complaint may not be summarily dismissed.

There are only two cases in Pennsylvania involving applications for membership in nonprofit real estate broker corporations operating a multiple listing service. In Anderson v. East Suburban Multilist Real Estate Brokers, Inc., 44 D. & C. 2d 53 (Allegheny County, 1967), plaintiff alleged that she was denied membership in defendant solely because she was a woman. The court held that defendant's informal rule (defendant had no bylaw restricting membership to men) precluding her from membership solely because of her sex, was unlawful discrimination and was not reasonable or germane to defendant's purposes and was, therefore, in violation of section 601 of the Nonprofit Corporation Law. The court, of course, sustained plaintiff's complaint.

In Collins v. Main Line Board of Realtors, 93 Montg. 382 (1970), which is on appeal to the Supreme Court of Pennsylvania, the court held that no one has a vested right to membership in such an organization and dismissed plaintiff's complaint which had asked the court to compel defendant to take her in as a mem-

ber. However, it was clear from the evidence presented that plaintiff's membership application was denied by defendant for good and sufficient cause because of unethical and inappropriate conduct on her part and not by reason of any arbitrary or unreasonable rule or bylaw of defendant. The court indicated quite plainly that if this had been the situation, the result would have been different.

In Grillo v. Board of Realtors of Plainfield Area, 91 N. J. Superior Ct. 202, 219 A. 2d 635 (1966), a lower court case, the court indicated that if a nonprofit real estate broker association refused membership to an applicant solely because he was a Negro, it would be unlawful discrimination. The court also held that defendant's bylaw requiring applicants to pay a $1,000 initiation fee bore no reasonable relation to the cost of admitting a new member and that it, as well as defendant's mandatory waiting period of one year after application before membership would be granted, was designed purely as a barrier against applications which would otherwise be filed.

In Collins, supra, the court touched upon the general rule that a private or professional association may accept or reject members as it chooses, subject only to the uniform application of its constitution, charter and bylaws: Kearns v. Howley, 188 Pa. 116 (1898); Grempler v. Multiple Listing Bureau of Harford County, 258 Md. 419, 266 A. 2d 1 (Maryland, 1970). Courts have been reluctant to interfere with the internal affairs of such organizations unless considerations of public policy and justice compelled judicial intervention: Falcone v. Middlesex County Medical Society, 34 N. J. 582, 170 A. 2d 791 (1961).

In Grempler, supra, the court considered a bylaw of defendant requiring its members to have their main offices in Harford County reasonable because

it made the members more directly accountable to defendant both ethically and financially. Nevertheless, the court's opinion makes it clear that if any of the bylaws of defendant were unlawfully discriminatory or not reasonably attuned to defendant's purposes, such a bylaw would be struck down.

Defendant contends that its bylaw limiting the employment of part-time salesmen is reasonable and germane to its purpose of upgrading and maintaining the high standards of the real estate profession, thereby promoting the business interests of its members, because it, the bylaw, tends to elevate professional standards by making its member brokers responsive to the needs of the public so that they may serve the public during regular office hours. However, it must be considered that plaintiffs are licensed real estate brokers under the Real Estate Brokers License Act, 63 PS §431, et seq., which neither prohibits plaintiffs from operating as part-time brokers nor prevents them from hiring part-time salesmen. We are yet to be convinced, as defendant would have us believe, that a thoroughly trained, qualified, competent, honest and industrious real estate salesman would degrade the profession in York County simply because he happened to work only part-time at it.

We are troubled as well by the fact that defendant's bylaw is inconclusive as to what is meant by full time or part time. For example, it states, inter alia, that to be full time the salesman must be able to serve the public during the office hours of his employer, yet the bylaw does not prescribe how many hours during the day or night the brokers must be open. Hence, the absurd situation arises that by possibility under the bylaw a salesman could be classified as full time if he works at the profession for the one hour his employer-broker's office is open to the public and another sales-

man as part time if he works for his broker only seven of the eight hours the broker's office is open.

We do not, however, hold as a matter of law that defendant's bylaw pertaining to the employment of part-time salesmen is unacceptably vague, unreasonable and not germane to defendant's purposes and in violation of section 601 of the Nonprofit Corporation Law. We feel defendant should have a chance to present evidence explaining or justifying its bylaw, keeping in mind that the issue of the bylaw may be irrelevant at trial if plaintiffs can prove an unlawful restraint of trade without it.

Does the *alleged* refusal of defendant to permit nonmembers to participate in its multiple listing service and its *alleged* refusal to permit its members to cooperate with nonmembers in the sale of real estate constitute an unreasonable and unlawful restraint of trade? We think they do if it is proved that it is an economic *necessity* for plaintiffs to share in the multiple listing and have the cooperation of defendant's members in order to stay in business. Concededly, not every combination in restraint of trade is illegal. Only those which are unreasonable are proscribed, i.e., those which tend to prevent competition, raise prices or create a monopoly: Board of Trade of the City of Chicago v. United States, 246 U.S. 231, 62 L. Ed. 683, 38 S. Ct. 242 (1918). The rule has been stated this way in Pennsylvania:

" 'The great weight of modern authority is to the effect that one who has been or will be injured thereby is ordinarily entitled to the equitable remedy of injunction to prevent the carrying out of a contract or combination, to which he is not a party, formed for the purpose of creating a monopoly, maintaining prices, restraining trade or competition, or injuring others in their business contrary to common law or statute,

if the damages which he would otherwise suffer are unascertainable, or the resulting injury would be irreparable, and legal remedies are inadequate or a resort thereto would cause a multiplicity of suits' ": Schwartz v. Laundry & Linen Supply Drivers' Union, Local 187, 339 Pa. 353, 357 (1940).

It is true that the court in Anderson, supra, while condemning defendant's refusal to accept plaintiff solely because she was a woman, nonetheless was of the opinion that a multiple listing service is an unobjectionable restraint of trade. However, our court in Holman v. York Board of Realtors, 82 York 81 (1968), in an opinion by Atkins, P. J., dismissed defendant's demurrer to a complaint brought by part-time real estate salesmen alleging an unlawful restraint of trade because of defendant's action in suspending their employer, who was a member broker of defendant, for employing part-time salesmen contrary to the same bylaw hereinabove discussed. We think it helpful to quote from his opinion at page 83:

"It appears both points can be answered by quoting from the Pennsylvania Supreme Court in Erdman v. Mitchell, 207 Pa. 79, where the court said: 'Common law recognizes the right to protection from the concentrated act of a group designed to prohibit the free exercise of the privilege of working for such employer as he chooses at such wages as he chooses to accept.' We see no reason why this principle should not be extended to include 'And for such hours as the parties may agree.' "

As we have said, if the facts alleged in the complaint are found to be true, we would suppose that defendant's acts constitute an unreasonable restraint of trade provided it is proved that economic necessity requires plaintiffs to participate in the multiple listing service and cooperate with defendant's member brokers in

order to stay in the real estate business. The cases are legion which hold that where a private organization establishes a monopoly and by concerted effort prevents its members from cooperating with nonmembers to the point where it is impossible for such nonmembers to continue in their profession or business, the action of such organization will be construed as an unreasonable restraint of trade and actionable. These cases, however, indicate that "economic necessity" must be clearly shown or proved.

For example, in Falcone, supra, the county medical society refused to admit plaintiff because, although he was licensed to practice medicine by the State of New Jersey, he had not attended four years at an American Medical Association accredited medical school, which was required by one of the society's bylaws, all of which denied him the use of virtually all of the hospitals in the area. The court found that this denial of membership made it practically impossible for plaintiff to continue in the practice of medicine and struck down the bylaw.

In Group Health Cooperative of Puget Sound v. King County Medical Society, 39 Wash., 586, 237 P. 2d 737 (Washington, 1951), the county medical society's bylaw which forced member-doctors to refuse to cooperate with nonmember doctors was held to be an unlawful restraint of trade. To the same effect is Associated Press v. United States, 326 U.S. 1, 89 L. Ed. 2013, 65 S. Ct. 1416 (1945), where the Supreme Court struck down a bylaw of the Associated Press which prohibited all AP members from selling news to nonmembers and which granted each member powers to block its nonmember competitors from membership. In Grillo, supra, on facts comparable to ours, the court held that the multiple listing service tended to stifle competition, damaged nonmembers and consti-

tuted an unreasonable restraint of trade in violation of the common law. While undoubtedly a multiple listing service is mutually beneficial to its members and the property owners who list with them, it would nevertheless be an unreasonable restraint of trade if it created an unlawful monopoly which deprived non-members from participating in the system.

Count 2 of the complaint also states a valid cause of action. Interference, without justification or privilege, with a legal right arising out of a business or occupation is an actionable tort: North Carolina Mut. Life Ins. Co. v. Plymouth Mut. Life Ins. Co., 266 F. Supp. 231 (Pa., 1967).

The Restatement of Torts, §764 provides that, "One who in his business refuses to deal with another in order to establish or maintain an illegal monopoly is liable to the other for the harm caused thereby," Comment (a) to this section is to the effect that the object of the situations contemplated by the section is the destruction of competition and that, consequently, competition is not available as a justification or defense.

The Restatement of Torts, §765, lays down the rule that persons who cause harm by concerted refusals to enter or continue business relations are liable, even though they wouldn't be liable for similar conduct without concert, "if their concerted refusal to deal is not justified under the circumstances."

According to the restatement, self-interest may be a justification but not if the refusal is unduly oppressive or prejudices a paramount social interest.

If plaintiffs prove that defendant here has intentionally and maliciously refused to enter into business relations with plaintiffs for the purpose of establishing a monopoly, and if this refusal is proved to have been

a concerted one to induce the members of the public not to deal with plaintiffs, plaintiffs have an action.

Pennsylvania has adopted the Restatement view of section 766 that one who, without privilege, induces or purposely causes another not to enter or continue business relations with another is liable for the tort of inducing refusal to deal: Glazer v. Chandler, 414 Pa. 304 (1964). It should be emphasized that the prospective economic advantage of the one interfered with need not be certain; reasonable assurance thereof is sufficient: Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp., 325 F. 2d 2 (3d Cir., 1963).

Finally, the Restatement of Torts, §768, states that one is privileged to cause another not to enter or continue relations with a competitor but only if the actor does not employ improper means and does not intend to create an illegal restraint on competition. For example, under no conditions does the competition privilege justify inducing a breach of contract.

If plaintiffs prove defendant's noncooperation policy and that it was used in conjunction with the device of exclusive listing contracts it could be held to be a form of inducement to sellers not to deal with plaintiffs and if the purpose of these tactics was to establish a monopoly, defendant would not be entitled to the protection of the "competition" privilege.

Count 3 of the complaint does not state a cause of action. Plaintiffs concede that it is doubtful that a violation of the criminal code would give rise to a civil action in plaintiffs because the statute was enacted to protect the public from being cheated by fraudulent advertising: Commonwealth v. Masters of Lancaster, Inc., 199 Pa. Superior Ct. 36 (1962).

Plaintiffs rely solely on Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314 (1962). There, an action was brought for damages for libelous newspaper adver-

tisement. Plaintiff had offered a roll of film free for each roll brought in for development. The next day, defendant published an ad stating that defendant would not inflate developing prices, give a free roll of film, would not print blurred negatives to inflate price, hurry up developing and ruin film or use inferior chemicals or paper. The trial court rendered judgment for defendant which was reversed. The court held that any language which unequivocally, maliciously and falsely imputes to an individual or corporation want of integrity in the conduct of his or its business is actionable. It held that no allegation of innuendo was necessary because the words were defamatory in themselves and the general damages for loss of personal or business reputation were recoverable without averments or proof of special damages. It felt the fact that plaintiff was not named in the ad did not bar recovery, because the circumstances clearly tended to identify him.

However, the facts in the present case are distinguishable. We have carefully examined defendant's advertisements and conclude that they are not libelous or defamatory per se. Nowhere do they impute any unreliability or unethical and dishonest conduct to plaintiffs. Nowhere do they state or imply that *only* multiple listing service relators provide the services set forth in the ads. Nowhere do they compare the multiple listing service brokers and their agents with nonmembers and their agents. All they do is simply extoll the virtues of the multiple listing brokers, their agents and the services they render. They constitute nothing more than sales "puffing" which is not actionable: Blake v. Thompson, 366 Pa. 352 (1951); Gillespie v. Hunt, 276 Pa. 119 (1923).

Under some circumstances, persons who are disparaged by false advertising have a cause of action

but only if the ad actually compares the product of plaintiff with the product of defendant: Testing Systems, Inc. v. Magnaflux Corp., 251 F. Supp. 286 (D.C. Pa. 1966).

Several cases have denied liability even where the advertising has been directed specifically at plaintiff and its products and even where it was false. See Smith-Victor Corp. v. Sylvania Electric Products, Inc., 242 F. Supp. 302, (1965 D.C. Ill.) and Zenobia Co. v. American Pistachio Corp., 168 Misc. 312, 5 N.Y.S. 2d 278, affirmed without opinion 259 App. Div. 806, 19 N.Y.S. 2d 656, appeal denied 259 App. Div. 864, 22 N.Y.S. 2d 522 (1938). In Zenobia, supra, the court said that even assuming that defendants' advertisement stating that the process used by defendants for producing pistachio nuts was superior to that employed by plaintiff, was known by defendants to be false, nonetheless that would not establish plaintiffs' claim. In our case there were no advertisements directed at plaintiffs, and, in fact, merely imply a superior ability to sell real estate.

Finally, it has frequently been held that advertising techniques which disparage plaintiff's goods or techniques are not actionable unless there is an allegation of specific damages: Golden Buddha, Inc. v. New York Times, Co., 182 Misc. 579, 45 N.Y.S. 2d 433, 267 App. Div. 903, 48 N.Y.S. 2d 327 (1943); and Erick Bowman Remedy Co. v. Jensen Salsbury Laboratories, Inc., 17 F. 2d 255, 52 A.L.R. 1187 (1926 C.A. 8th, Minn.). Clearly, in the case at bar, plaintiffs have alleged only general damages.

However, since the complaint implies that plaintiffs may have other examples of deceptive advertising on the part of defendant, we will sustain the demurrer to count 3 with leave to plaintiffs to amend, if they can, to aver further facts giving rise to a cause of action in

consonance with this opinion. In view of the foregoing, we enter the following

ORDER

And now, to wit, March 9, 1972, defendant's preliminary objections to counts 1 and 2 of the complaint are overruled and dismissed but defendant's preliminary objection to count 3 of the complaint is sustained with leave to plaintiffs to file an amended count 3 of the complaint within 20 days of the date of this order.

An exception is granted to all parties.