152 N.J. Super. 100 (1977)
377 A.2d 791
WAYNE C. POMANOWSKI, PLAINTIFF,
v.
MONMOUTH COUNTY BOARD OF REALTORS, A NEW JERSEY CORPORATION; MONMOUTH COUNTY MULTIPLE LISTING SERVICE; NEW JERSEY ASSOCIATION OF REALTORS; NATIONAL ASSOCIATION OF REALTORS; WILLIAM G. KIRCHER; AND CHARLES DARRAH, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 19, 1977.
*102 Mr. Paul V. Strawinski for plaintiff (Messrs. Organ & Strawinski, attorneys).
Mr. Arthur M. Greenbaum for defendants New Jersey Association of Realtors and National Association of Realtors *103 (Messrs. Greenbaum, Greenbaum, Rowe & Smith, attorneys).
Mr. C. Keith Henderson for defendants Monmouth County Board of Realtors, Monmouth County Multiple Listing Service, William G. Kircher and Charles Darrah (Messrs. Lautman, Rapson & Henderson, attorneys).
YACCARINO, J.S.C.
The issue presented to the court by the facts of this case is one which has not been the subject of a reported decision in this jurisdiction but one which has far-reaching effects upon the real estate industry in this State as well as nationally. Simply stated, the issue before the court is whether membership in a county board of realtors  even where open to all licensed real estate brokers and salesmen  may be deemed a condition precedent to participation in the board's multiple listing service without offending the New Jersey Antitrust Act, N.J.S.A. 56: 9-1 et seq. As all of the named defendants[1] have moved for summary judgment and the court finds that no genuine issue of material fact exists, the action is one which may be tried on the pleadings and affidavits submitted and final judgment rendered thereon pursuant to R. 4:67-5.
The facts of the case may be stated as follows. In contrast to the usual factual context where a plaintiff has been excluded from membership in the county board of realtors, plaintiff Wayne C. Pomanowski, a real estate broker licensed *104 by the State of New Jersey, trading as the Thompson Agency, was a member of defendant Monmouth County Board of Realtors from about July 1972 until March 31, 1977. Plaintiff's termination of membership was voluntary and he has stated by way of affidavit that such decision was motivated by his disagreement with the philosophy and conduct of the county, state and national organizations. This divergence of viewpoints obviously did not extend to the county board's multiple listing service.
But for the payment of dues and licensing by the State, there are no criteria for membership in the Monmouth County Board of Realtors. For the year 1977 the Thompson Agency was required to pay dues in the sum of $250: $170 for an active member (plaintiff) and $80 for two realtor-associates. Interestingly, the dues assessment is comprised of a membership fee for the county board and the state and national associations. No one may choose to restrict membership to only the local organization.
To become a member of the Monmouth County Multiple Listing Service one need only be an active member in good standing of the Monmouth County Board of Realtors, comply with the rules and regulations of the multiple listing service which provides, among other things, for the division of commissions and specific service charges, and pay an initiation fee in the sum of $500. As in plaintiff's case, failure to pay dues to the county board (and, of course, to the state and national associations) automatically terminates eligibility to participate in the multiple listing service. It is important to note, however, that the rules and regulations of the multiple listing service provide that the initiation fee "shall approximate the actual costs of bringing the service to the participant." Also noteworthy is the fact that not all multiple listing services require membership in the county or other realtor organization. Plaintiff has submitted to the court a survey, the accuracy of which was conceded at oral argument, of 35 multiple listing services in this State. Eight services are open to realtor members and nonmembers alike.
*105 In sum, the plaintiff in this case is not one who has been excluded from membership in the organization which furnishes the multiple listing service. Plaintiff's allegation that the nexus between the county board of realtors and the multiple listing service, that is, the essentially nondiscriminatory exclusion of nonmembers from participation in the service, constitutes an unlawful restraint of trade rests solely upon plaintiff's decision to discontinue funding of the realtor organizations.
None of the defendants in this case has challenged the applicability of the antitrust laws to the multiple listing service on the grounds of lack of economic necessity to plaintiff or its insubstantial effect on the relevant real estate market. Both issues find ready answer. As to the former, the advantages of participation in a multiple listing service are common knowledge and have been clearly delineated by case law. E.g., Oates v. Eastern Bergen Cty. Multiple Listing Service, 113 N.J. Super. 371, 381-82 (Ch. Div. 1971); Grillo v. Board of Realtors of Plainfield Area, 91 N.J. Super. 202, 218-19 (Ch. Div. 1966). As to the latter, it suffices to note that the Monmouth County Board of Realtors has been described as "one of the largest and most active Boards in the State of New Jersey with more than 260 Realtor members and more than 1,400 Realtor Associates." 19 N.J. Realtor 7 (April 1977). To be sure, the ability to restrain trade is apparent. Marin Cty. Bd. of Realtors, Inc. v. Palsson, 130 Cal. Rptr. 1, 549 P.2d 833, 842 (Sup. Ct. 1976).
Cases involving exclusion from organizations providing multiple listing services both in this State and in other jurisdictions have taken a variety of approaches and have reached divergent results. Oates v. Eastern Bergen Cty. Multiple Listing Service, supra (severe restrictions on membership in organization providing multiple listing service held per se violation); Grillo v. Board of Realtors of Plainfield Area, supra (exclusion of nonmembers of county board from its multiple listing service contravention of rule of reason); *106 Marin Cty. Board of Realtors, Inc. v. Palsson, supra (qualifications beyond state licensing by board offering multiple listing service held invalid under rule of reason; application of per se rule specifically rejected); Collins v. Main Line Bd. of Realtors, 452 Pa. 342, 304 A.2d 493 (Sup. Ct. 1973) (restrictions on membership beyond state-imposed requirements held illegal per se); Barrows v. Grand Rapids Real Estate Bd., 51 Mich. App. 75, 214 N.W.2d 532 (App. Ct. 1974) (membership restrictions not invalid under rule of reason; no evidence of substantial control of market by board); Grempler v. Multiple Listing Bureau, Inc., 258 Md. 419, 266 A.2d 1 (Ct. App. 1970) (requirement that applicant maintain main office in county upheld; rule of reason and right to admission into voluntary association analysis employed).
While both of the cases in this jurisdiction have found restrictions upon membership in organizations providing multiple listing services to be unlawful restraints of trade, the cases have employed divergent analyses. Grillo, supra, which was decided prior to the adoption of our state antitrust law, applied the rule of reason test although it is abundantly clear from that opinion that the court leaned heavily toward application of the per se doctrine. Oates, supra, decided under the state antitrust act, followed the per se approach. Neither case was the subject of appellate review, leaving this court of coequal jurisdiction in a relatively uncharted sea. The threshold issue of which test is to be applied is squarely raised by the parties.
Having duly considered the matter, this court is of the opinion  despite the holding in Oates and the court's apparent predisposition in Grillo  that a per se analysis cannot be employed for an alleged concerted refusal to deal of this nature. Both Oates and Grillo relied upon cases such as Fashion Originators' Guild of America, Inc. v. FTC, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1944); Klor's Inc. v. Broadway-Hale Stores, *107 Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), and Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), which declared in sweeping language that group boycotts or concerted refusals to deal are per se illegal restraints of trade. Those cases are readily distinguishable, however, having as their aim the prevention of "a particular type of predatory activity." Marin Cty. Board of Realtors, Inc. v. Palsson, supra, 549 P.2d at 840. As was noted in that case, the
* * * limitation on the per se rule is particularly applicable to trade association agreements not directly aimed at coercing third parties and eliminating competitors. In cases involving such agreements, courts have generally applied the rule of reason test. * * * This trend, while not universal, indicates a recognition by the courts that trade associations may perform beneficial services for their members and society.... In the course of providing these benefits, the associations often exclude nonmembers. But such exclusion, unless directly aimed at eliminating competition, can rarely be said to be so inherently destructive or so devoid of any discernible benefit that the courts must condemn the policy without exploring its effects or the underlying rationale. [Id. at 840-41; citation and footnote omitted]
The court finds this analysis to be most persuasive; moreover, it is compelling where, as here, plaintiff was a member of the trade association and his exclusion therefrom voluntary.[2]
*108 This brings the court to the question of whether mandated membership in the Monmouth County Board of Realtors (and the state and national associations) as a condition precedent to participation in the multiple listing service is a reasonable restraint of trade. Under the facts of this case it clearly is not. Here the payment of dues is totally unrelated to the operation of the multiple listing service. Even members are required to pay an initiation fee of $500 which sum is designed to approximate the actual cost of providing the service. It is apparent, therefore, that board membership is surplusage. Undoubtedly, dues are used for purposes believed to advance the interests of the real estate industry as a whole, as, for example, the litigation fund; however, the mutual benefit concept cannot be used to coerce a person to join what is designed to be a voluntary association. Lawyers are not compelled to join a county bar association and, should they choose to do so, they do not have to join a state or national bar association. Here, however, real estate brokers and salesmen must become members of the county board and the state and national associations in order to participate in the multiple listing service, despite the fact that membership and the payment of dues are unrelated to actual cost.
It is apparent, moreover, that no bona fide justification may be made in support of the reasonableness of the membership requirement. The short answer is that of the 35 multiple listing services surveyed by plaintiff, eight do not condition participation upon membership. Not only have certain segments of the industry recognized that the nexus between the local board and the multiple listing service is artificial, but in exclusion cases striking down restrictions upon membership *109 the judicial relief afforded has encompassed complete elimination of any constraints upon nonmember access to the multiple listing service. E.g., Grillo v. Board of Realtors of Plainfield Area, supra, 91 N.J. Super. at 229; Marin Cty. Board of Realtors, Inc. v. Palsson, supra, 549 P.2d at 845.
Against this torrent of logic defendants have understandably grasped at a straw contained in Grillo where the court opined that
* * * [i]f every licensed real estate broker in the Plainfield area could become a member of the Board for the asking, no nonmember would have cause for complaint about being excluded from the benefits of the multiple listing service. [91 N.J. Super. at 210]
That this statement stands four-square against plaintiff's position cannot be denied. But this apparent barrier is removed when it is acknowledged that the court in Grillo went on to grant nonmembers complete access to the multiple listing service furnished by the local board. In brief, the Grillo court itself recognized that a membership requirement needs a rational basis to find sustenance. Moreover, as plaintiff's survey points out, the local board which defended in Grillo is one of eight which does not presently require membership as a condition precedent to access to the multiple listing service.
For the foregoing reasons final judgment will be entered declaring that the by-laws, rules and regulations of the Monmouth County Board of Realtors and the Monmouth County Multiple Listing Service which limit participation in the service to members of the local board constitute an unlawful restraint of trade. The county board and its committee will be permanently enjoined from denying non-members of the board equal access to the multiple listing service.
As the foregoing declaratory and injunctive remedy affords plaintiff complete relief, the motions for summary judgment of the other named defendants will be granted. Since plaintiff waived at oral argument any claim for compensatory *110 or punitive damages, jurisdiction will be retained solely for the purpose of determining the award of reasonable attorneys' fees and costs of suit pursuant to N.J.S.A. 56:9-10(b).
NOTES
[1] Plaintiff instituted this action against all parties having even a remote connection to the cause of action. Not only were the Monmouth County Board of Realtors and the Monmouth County Multiple Listing Service, a committee of the county board, made parties defendant, but Charles Darrah, president of the county board, William G. Kircher, executive officer of the county board, the New Jersey Association of Realtors and the National Association of Realtors were joined. As complete relief can be afforded in regard to the rather abstract issue presented by considering the roles of the first two defendants, simplicity suggests that consideration of the ancillary defendants be limited.
[2] The court pauses to note that it disagrees with the defendants' argument that application of the per se rule is foreclosed by statute. N.J.S.A. 56:9-5(a) provides:

This act shall not forbid the existence of trade and professional organizations created for the purpose of mutual help, and not having capital stock, nor forbid or restrain members of such organizations from lawfully carrying out the legitimate objects thereof not otherwise in violation of this act; nor shall those organizations or members per se be illegal combinations or conspiracies in restraint of trade under the provisions of this act.
A close reading of this section demonstrates that the organization as an entity must be viewed separately from its conduct. Thus, the act exempts the organization itself while mandating that the activities of its members may not be undertaken in violation of law. Furthermore, a per se approach may not be applied to the organization, although the doctrine may be applied to the activities of the organization where appropriate. See Oates v. Eastern Bergen Cty. Multiple Listing Service, Inc., supra, 113 N.J. Super. at 394. To construe the statute otherwise would require detailed judicial analysis of conduct which clearly invokes the per se rule, such as price fixing, a result not envisioned by the Legislature.