[Civ. No. 49895. Second Dist., Div. Three. July 29, 1977.]

GLENDALE BOARD OF REALTORS,
Plaintiff, Cross-defendant and Respondent, v.
K. W. HOUNSELL, Defendant, Cross-complainant and Appellant.

## COUNSEL

Jacoby & Meyers and Stephen Z. Meyers for Defendant and Appellant.

John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Barry R. Levy, Deputy District Attorneys, as Amici Curiae on behalf of Defendant and Appellant.

Edwards, Edwards & Ashton, Mark U. Edwards, Brobeck, Phleger & Harrison, Moses Lasky, Malcolm T. Dungan and Kenneth N. Burns for Plaintiff and Respondent.

## OPINION

**COBEY, J.**—This case presents the question whether the Glendale Board of Realtors (hereafter usually the Board) has violated the Cartwright Act (Bus. & Prof. Code, §§ 16720, 16726) by generally denying to nonmembers of the Board access to its multiple listing service.[1] ■ We hold that it has on the authority of *Marin County Bd.*

---

[1]K. W. Hounsell, defendant in the Board's declaratory relief action and cross-complainant in his cross-action against the Board for anti-trust damages, a licensed

*of Realtors, Inc.* v. *Palsson,* 16 Cal.3d 920 [130 Cal.Rptr. 1, 549 P.2d 833], and the record before us. We will therefore reverse the trial court's judgment to the contrary.[2]

## DISCUSSION

In *Palsson* our Supreme Court decided that the Marin County Board of Realtors had violated the Cartwright Act (1) by limiting its membership to persons primarily engaged in the real estate business (an issue not present in this case) and (2) by denying nonmembers access to its multiple listing service. (16 Cal.3d at p. 924.) The Glendale Board here claims that *Palsson's* conclusion of anti-trust violation rested upon the joint presence of these two anti-competitive practices and therefore where only one exists as in the present case, *Palsson* is without precedential effect. This is a misreading of *Palsson. Palsson* considered separately under the rule of reason standard the anti-competitive effect of *each* of these practices and concluded that each, as practiced by the Marin Board, constituted a violation of the Cartwright Act. (16 Cal.3d at pp. 935-938, 938-940.)[3] Our Supreme Court therefore directed the trial court to order the Marin Board to discontinue each of these practices without reference to the other. (16 Cal.3d at p. 940.)[4] Furthermore, our Supreme Court pointed out in *Palsson* that the doctrine of stare decisis would apply in a future case with respect to a similar rule in a comparable industry having like economic effects. (16 Cal.3d at p. 934, fn. 10.) Here, we have the identical rule and the identical industry. The only question in deciding whether *Palsson* controls this case then is whether the nonaccess rule for

Glendale real estate broker but a nonmember of the Board by his own choice, enjoys temporary access to the Board's multiple listing service during the pendency of this litigation by the Board's choice. Hounsel pays the fees prescribed by the Board for membership in its multiple listing service.

[2]The *Palsson* decision was filed one week after the trial court filed its judgment in this case. Hounsell moved unsuccessfully for a new trial on the basis of *Palsson.*

We decide only the liability issue. We neither reach nor decide the damage issue. We do observe, though, that the trial court properly rejected Hounsell's offer of proof on this issue as being too speculative. On retrial Hounsell may, if he chooses, attempt to show that he sustained damages between the date he applied for membership in the Board's multiple listing service and the date the Board made such service available to him.

[3]At the conclusion of its discussion of the Marin County Board's nonaccess practice for nonmembers, our Supreme Court in *Palsson* said (16 Cal.3d at p. 938): "While the Marin County Board of Realtors may permissibly provide some exclusive benefits to its members, access to the multiple listing service is so essential to nonmembers if they are to compete effectively that such access must be granted to all licensed salesmen and brokers who choose to use the service."

[4]We note that our Supreme Court in *Palsson* was careful to specify that a nonmember using a Board's multiple listing service may be "charged a reasonable fee for use of the service consistent with the per-capita costs of operation." (16 Cal.3d at p. 940.)

nonmembers has economic effects in Glendale like those experienced in Marin County.

The record demonstrates that it does. The evidence indisputably shows that in Glendale the Board's multiple listing service, a system for the immediate pooling of all single-family residence listings among the participating brokers, provides each participant with a much larger inventory of such residences than he or she would otherwise have and these residences generally can be sold faster and at possibly higher prices because many more brokers and their sales personnel are made aware of the fact that these residences are on the market. There are very few brokers in Glendale involved professionally in the selling and buying of single-family residences in any significant quantity who are not members of the Board. In fact, in the expert opinion of a long-time leading Glendale realtor, a real estate broker practicing his profession in Glendale must have access to the Board's multiple listing service if he or she is to compete effectively against fellow brokers enjoying such access.[5]

### DISPOSITION

The judgment below is reversed for further proceedings consistent with the views expressed in this opinion.

Allport, Acting P. J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 22, 1977.

---

[5] The Board's multiple listing service is the only such service in Glendale.