166 N.J. Super. 269 (1979)
399 A.2d 990
WAYNE C. POMANOWSKI, PLAINTIFF-RESPONDENT,
v.
MONMOUTH COUNTY BOARD OF REALTORS, A NEW JERSEY CORPORATION; MONMOUTH COUNTY MULTIPLE LISTING SERVICE, DEFENDANTS-APPELLANTS, AND NEW JERSEY ASSOCIATION OF REALTORS; NATIONAL ASSOCIATION OF REALTORS; WILLIAM G. KIRCHER; AND CHARLES DARRAH, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1978.
Decided February 21, 1979.
*270 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. C. Keith Henderson argued the cause for appellants (Messrs. Lautman, Rapson & Henderson, attorneys; Mr. Richard H. Mills on the brief).
*271 Mr. Paul V. Strawinski argued the cause for respondent (Messrs. Organ & Strawinski, attorneys).
Mr. Robert J. Clark, Deputy Attorney General, argued the cause for amicus curiae Antitrust Section, Division of Criminal Justice, State of New Jersey (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Martha K. Kwitny (Deceased), Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Defendants appeal from summary judgment entered below in favor of plaintiff, declaring defendants guilty of an unlawful restraint of trade and fashioning appropriate injunctive relief. 152 N.J. Super. 100 (Ch. Div. 1977). The context in which this appeal arrives is sufficiently set forth in the trial court opinion. As succinctly put there, and true here, "the issue before the court is whether membership in a county board of realtors  even where open to all licensed real estate brokers and salesmen  may be deemed a condition precedent to participation in the board's multiple listing service without offending the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq." 152 N.J. Super. at 103.
Although we find it necessary to reverse and remand, we are not in essential disagreement with much that is said in the opinion below. We need not join in the implicit criticism there of Oates v. East Bergen Cty. Mult. List. Serv., 113 N.J. Super. 371 (Ch. Div. 1971), and Grillo v. Bd. of Realtors of Plainfield Area, 91 N.J. Super. 202 (Ch. Div. 1966), however. We observe that those cases are in any event distinguishable on their facts. In both there were restrictions on membership found to be exclusionary. Such is not the case here. Accordingly, we need neither expressly approve nor disapprove Oates and Grillo. It is enough that we agree with the trial judge that, substantially for the reasons set forth by him, the so-called *272 "per se" rule is not applicable to the facts of this case where membership is available to all on precisely the same terms, i.e., a valid state license and the payment of dues. It is notable that plaintiff here was a member of the board and voluntarily resigned.
In these circumstances we do not find "conduct that is manifestly anticompetitive," and it is only in that setting that per se rules of illegality are appropriate. Continental T.V. Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49-50, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).[1]
At this point it is appropriate to comment that we also concur in the conclusion expressed in footnote 2 (152 N.J. Super. at 107) that, nevertheless, if defendants' activities do in fact offend the statute, defendants are not immune by virtue of N.J.S.A. 56:9-5(a); that section by its terms limits its operation to activities "not otherwise in violation of this act."
Which brings us to our agreement with the trial judge that the exclusion of nonboard members from the board operated multiple listing service must be examined for reasonableness in order to determine whether it is an illegal restraint of trade. This is consistent with the so-called "rule of reason" analysis of activities such as these.
This rule of reason was articulated as long ago as Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Recognized and applied over the years, it requires the fact finder to weigh "all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *273 Continental T.V. Inc. v. GTE Sylvania Inc., supra, 433 U.S. at 49, 97 S.Ct. 2549, 2557. A concise description of the scales upon which this weighing is to be performed is found in the frequently cited Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242 (1918). There Mr. Justice Brandeis said, in connection with his comment that restraint of trade alone could not determine illegality since restraint was the "very essence" of agreements and regulation of trade:
* * * The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition, or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint, and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation, or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences. * * * [246 U.S. at 238, 38 S.Ct. 242 at 244.]
It is in respect to the weighing process that we part company with the trial judge. He was content to decide the matter on affidavits and, perhaps unimportantly, not on a motion of plaintiff who ultimately prevailed and who had not made a motion for judgment, but on defendants' motion. We are concerned that in a matter where the ruling would reach far beyond the particular case, the determination has arrived predicated upon a sparse, relatively uninformative and certainly lifeless record. Jackson v. Muhlenberg Hospital, 53 N.J. 138 (1969).
Further, we are not satisfied that even if this particular case were the only one involved in the problem, the record thus produced is sufficient to result in a decision in which we might have confidence. We cannot share the certitude of the trial judge, in his response to his own inquiry as to whether that which is the subject of complaint in the *274 case is a reasonable restraint of trade, when he opines that "[u]nder the facts of this case it clearly is not," because we are not at all certain that those facts have been sufficiently displayed. The generalized, abbreviated and, it would appear in some cases speculative findings of the trial judge do not reassure with respect to our present trepidations.
As is said in White Motor Company v. United States, 372 U.S. 253, 261, 83 S.Ct. 696, 701, 9 L.Ed.2d 738 (1963), "That `rule of reason' normally requires an ascertainment of the facts peculiar to the particular business." While there is a smattering of this, we feel, as the court felt in White Motor, "we know too little of the actual impact [of the restriction and of the other factors of Board of Trade v. United States, supra] to reach a conclusion on the bare bones of the documentary evidence before us." Ibid.
Consequently, we find it necessary to remand for a plenary hearing in which the foregoing principles may be applied. Needless to say, the trial judge must then construct his determination with the bricks and mortar of detailed findings of fact and conclusions of law.
In view of our determination we need not and should not consider the alleged constitutional right of nonassociation (or freedom of association) espoused by the Attorney General in his amicus curiae brief on behalf of the Antitrust Section of the Division of Criminal Justice. The issue was not raised or argued below. To the extent this alleged right may reflect policy considerations which might affect a rule of reason determination, the trial judge may choose to consider it on the remand.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] There is an extraordinary reliance on federal case law in connection with interpretation of the New Jersey Antitrust Act (N.J.S.A. 56:9-1 et seq.), not only because of the dearth of state case law interpretation of this relatively new state legislation, but also because that statute itself mandates such effectuation "insofar as practicable, [of] a uniformity in the laws of those states which enact it." N.J.S.A. 56:9-18. See Exxon Corp. v. Wagner, 154 N.J. Super. 538, 544 (App. Div. 1977).