[Civ. No. 19647. Third Dist. May 29, 1981.]

BARNEY FELDMAN, Plaintiff and Appellant, v.
SACRAMENTO BOARD· OF REALTORS, INC., et al., Defendants
and Respondents.

Counsel

Barry & Finley, Steven Finley and David Barry for Plaintiff and Appellant.

Moses Lasky, John E. Munter, Lasky, Haas, Cohler & Munter, Dahl, Hefner, Stark & Marios, Condon & Condon, Gerald M. Condon and Michael J. Festa for Defendants and Respondents.

Opinion

**CARR, J.**—Plaintiff appeals from the judgment of dismissal of his second cause of action after a motion for summary judgment was granted.[1] For reasons which follow, we reverse and remand for further trial proceedings.

---

[1] Preliminarily, we note that the present appeal does not run counter to the one final judgment rule since the two-cause action involves multiple parties and the judgment now before us disposes of the only cause alleged against all the named defendants except the Sacramento Board of Realtors. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Ap-

Plaintiff's second amended complaint contains two causes of action.[2] The first is against Sacramento Board of Realtors (SBOR) and alleges plaintiff had been engaged by a client to sell certain real property in Sacramento; that he sought to list this property in the multiple listing service (MLS) operated by defendant Sacramento Board of Realtors and offered to pay the cost of such listing; that he was refused because he lives in Los Angeles and does not maintain an office in the territory serviced by the SBOR. Plaintiff further alleges this rule of SBOR is designed to prevent competition in violation of Business and Professions Code section 16720 et seq. (Cartwright Act). Triple damages are sought.

The second cause of action, with which we are here concerned, is labeled "Group Boycott" and is against all defendants, including SBOR. Each defendant is either a realty board operating a multiple listing service, an association of realtors on a state and national basis, or a multiple listing service. This count essentially alleges that plaintiff is a real estate broker who practices his profession throughout the State of California, including those areas serviced by the defendants; that he is not a member of any of the defendant boards or associations but wishes to make occasional use of their MLS on a book-by-book basis,[3] alleged to cost less than $50 per MLS book. Further that plaintiff has requested of each defendant board that he be allowed to use its MLS for the per capita cost of his use, but all have refused, and insist upon the payment of an initiation or participation fee[4] plus a "substantial" quarterly fee.

---

peal, §§ 36, 48, pp. 4050-4051, 4062-4064.) The interests of justice are better served by affording prompt appellate review of the issues definitively adjudicated as to these defendants than by requiring postponement of the appeal until the final outcome of the remaining trial proceedings. (*Justus, supra*, at p. 568.) Moreover, section 437c Code of Civil Procedure was amended in 1973 to provide "Except where a separate judgment may properly be awarded in the action, no final judgment shall be entered on a motion for summary judgment prior to the termination of such action . . . ." We deem this to be a proper situation for a separate judgment.

[2]This is a distillation from the eight-count original complaint purporting to be a class action as to both plaintiffs and defendants and the six-count first amended complaint also purporting to be a class action. Demurrers by SBOR and United Multiple Listing Service, Inc. were sustained with leave to amend as to the first amended complaint; SBOR's motion for summary judgment in the two "Feldman" causes of action was denied.

[3]Apparently 13 "books" are published each quarter.

[4]These fees are: United Multiple Listing Service $730; Beverly Hills Board of Realtors, $400; Oxnard Harbor Board of Realtors, $300; Los Angeles Board of Realtors, $400; Sacramento Board of Realtors, $350; San Fernando Valley Board of Realtors, $400; and San Francisco Board of Realtors, $300.

In concert with defendant boards, defendants California Association of Realtors and the National Association of Realtors are alleged to require defendant boards to submit MLS participation fees to them for approval and do not permit fees based on the "actual per capita cost of use." In addition, defendant United Multiple Listing Service would require plaintiff to procure the signed recommendations of two members of that listing service.

By reason of these "excessive" financial and other requirements for participation in the respective listing services, plaintiff alleges he is unable to make effective use of the listing services on a book-by-book basis and to practice his state-wide real estate business. This conduct by defendants has created a group boycott injuring plaintiff and he seeks compensatory and treble damages as well as injunctive relief.

Defendant United Multiple Listing Service, Inc., filed a general demurrer and motion for summary judgment to the second cause of action. The remaining defendants joined in a general demurrer, motion for summary judgment and motion to strike as to the second cause of action.

Defendant United Multiple Listing Service, Inc., filed a declaration in support of its summary judgment motion averring it was not a realty board, had no organizational relationship to any realtor organization, was not a member of either of the defendant associations but simply an independent multiple listing business open to any real estate broker licensee willing to join. That there are no restrictions on membership and inferentially all members are charged the same fee.

In support of their motions for summary judgment the other defendants realty boards filed declarations that each MLS is open to board members and nonmembers alike, that the participation fees are the same for both board members and nonmembers, and that these fees cover only the cost of operating the MLS. That after payment of the initial fees, the listing services of the Sacramento and San Fernando boards are available on a book-by-book basis although the other four boards charge quarterly fees.

In a declaration in opposition to defendants' motions for summary judgment, plaintiff averred in relevant part that the purchase of an MLS book from the several boards is essential to his state-wide business

as a real estate broker and that he cannot afford to pay all the initiation and MLS fees requested.

The trial court granted defendants' motions for summary judgment on the ground that none discriminate in offering and pricing their listing services.[5] Plaintiff's appeal ensued.

 On the ground stated, summary judgment was improper. Nondiscrimination alone is insufficient to withstand a challenge under our state antitrust laws.

 As stated in *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 930-931 [130 Cal.Rptr. 1, 549 P.2d 833]: "... The threshold question is whether the practices ... should be judged per se violations of the Cartwright Act or reviewed under the 'rule of reason' standard. In general, only unreasonable restraints of trade are prohibited. (*Standard Oil Co.* v. *United States* (1911) 221 U.S. 1 ....) However 'there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.' ... Among these per se violations is the concerted refusal to deal with other traders, or, as it is often called, the group boycott. (*Ibid.*; *Klor's* v. *Broadway-Hale Stores* (1959) 359 U.S. 207, 212....)" In *Palsson*, the court then determined the "rule of reason," rather than any "per se" rule, is the applicable standard in determining whether a realty board's requirements for participation in its listing service is an unreasonable restraint of trade under California antitrust law. (See also *Glendale Bd. of Realtors* v. *Hounsell* (1977) 72 Cal.App.3d 210, 212-213 [139 Cal.Rptr. 830].)

Holding the rule of reason standard as employed in federal cases interpreting the Sherman antitrust act to be applicable, the court in *Palsson* considered, in terms of the relevant real estate market, the anticompetitive effects of a realty board's rule limiting access to its MLS only to board members. (At pp. 934-936; see also generally Von Kalinowski, Business Organizations: Antitrust Laws and Trade Regulation (1980) § 6102 [4][a], pp. 6-123 to 6-125.) Finding substantial anticompetitive effects, the court then weighed these effects against

---

[5]The minute order stated: "... Motions for Summary judgment are granted, it being conceded there is no discrimination between members and non-members."

countervailing justifications for the access rule (*Palsson, supra,* at p. 937) and determined that access to the MLS was so essential to competition within the particular market that the board's rule denying access to nonmember licensed real estate salesmen and brokers constituted an unreasonable restraint of trade. (*Id.,* at p. 938; accord, *Hounsell, supra,* 72 Cal.App.3d 210.) In remanding the case to the trial court for the fashioning of an appropriate injunctive decree, the court in dicta provided guidance as follows: "The board's rules denying access of nonmembers to the multiple listing service must be eliminated, although nonmembers may be charged a reasonable fee for use of the service consistent with the per-capita costs of operation." (*Palsson, supra,* at p. 940.)[6]

The rule of reason requires the fact-finder to weigh all the circumstances of the case (see *id.,* fn. 10, at p. 934; *Continental T. V., Inc.* v. *GTE Sylvania Inc.* (1977) 433 U.S. 36, 49 [53 L.Ed.2d 568, 580, 97 S.Ct. 2549]), including the facts peculiar to the business to which the restraint is applied, the nature of the restraint, and its effects (*Pomanowski* v. *Monmouth Cty. Bd. of Realtors* (1979) 166 N.J. Super. 269 [399 A.2d 990, 992] [1979-1 Trade Cases ¶ 62,603, pp. 77,491 and 77,493, citing *Board of Trade* v. *United States* (1918) 246 U.S. 231, 238 [62 L.Ed. 683, 687, 38 S.Ct. 242]; *Pomanowski* v. *Monmouth Cty. Bd. of Realtors* (1980) 175 N.J. Super. 212 [417 A.2d 1119] [1980-2 Trade Cases ¶ 63,487, p. 76,569]). ▮ Stating the rule in the present context, the reasonableness of the requirements for MLS participation and the extent to which those requirements act as a deterrent to participation must be considered where such participation affords traders a substantial competitive advantage. (See Opn. of the Atty. Gen. of N.C. (1980) 1980-1 Trade Cases ¶ 63,217, p. 78,040.) A showing only that the participation requirements in defendant boards' listing services are not discriminatorily priced as between real estate brokers who are board members and those who are not is highly relevant but insufficient to sustain a summary judgment in defendants' favor that such requirements do not unreasonably restrain competition. (See *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724]; *Varwig* v. *Anderson-Behel Porsche/Audi, Inc.* (1977) 74 Cal.App.3d 578, 580 [141 Cal.Rptr. 539].)

In *United States* v. *Realty Multi-List, Inc.* (5th Cir. 1980) 629 F.2d 1351, the court reversed a summary judgment in favor of a multiple

---

[6]It is on this dicta that appellant Feldman predicates his case.

listing service in an antitrust suit brought by the United States under the Sherman Act (15 U.S.C.A. § 1 et seq.). At issue were the membership criteria of a Mucogee County, Georgia multiple listing service, which required, among other rules, a favorable recommendation for membership by the membership committee, an affirmative vote for admission by 85 percent of the active members (later reduced to a simple majority), the maintenance of an active real estate office in Mucogee County, a favorable credit report and business reputation and the purchase of a share of stock in the listing service for $1,000. The court, in a comprehensive analysis, determined the membership criteria did not warrant per se treatment but the rule of reason. In commenting on fee requirements, the court observed: "... [T]he operation of a multiple listing service is not cost-free.... While a fee structure could be abused to effectively deter all newcomers from entrance, the service must be allowed to recoup its costs of operation ...." (629 F.2d 1351 at pp. 1368-1369.) In agreeing with the government's position that the stock purchase requirement at a price unrelated to the cost of the service provided or the cost of maintaining the service is an unreasonable restraint in competition, the court stated at page 1386: "Doubtlessly, RML must be allowed to establish fee schedules which allow it to recoup its costs of operation and to maintain its viability as a going concern. Among those costs which it must be allowed to recover are the start-up costs involved in serving a new member. In addition, it is reasonable to assess a new member a *pro rata* contribution toward the maintenance and development of RML, including the accumulation of reasonable reserves. To require more than this, however, is to create problems. A sizeable membership fee which bears no relation to the cost factors outlined above may not only create a significant barrier to new entry and to the association, but may create 'a strong inference that the amount has been set up as a barrier against' new applications. [Citations.] Since the antitrust laws reach the power to create anticompetitive effects, as well as the effects themselves, a rule which allows an association such anticompetitive potential should be held unreasonable."

■ It is correct that summary judgment may be affirmed on appeal regardless of the correctness of the grounds upon which the trial court reached its conclusion (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 226, pp. 4215-4216). ■ The six defendant boards who filed uncontested declarations showing that the MLS fees of each board cover only the cost of operating the service[7] therefore contend summary

---

[7]Defendant United Multiple Listing Service did not so declare.

judgment should be affirmed as to them on the basis of such factual showing. However, a showing that the fees in question support overhead and other costs associated only with defendants' listing services does not necessarily foreclose a finding by the trier of fact that those fees are unreasonably restrictive of competition.

The *Palsson* court's advice that a board of realtors operating a MLS might charge participants a "reasonable fee for use of the service consistent with the per-capita costs of operation" is nonbinding dictum. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 676, pp. 4589-4591.) Defendants cannot rely on such dictum and construe it to establish that the fees they charge are reasonable as a matter of law.[8] Under the rule of reason, all circumstances must be considered. Such factual resolution is in the first instance most appropriately the province of the trial court.[9]

■ Remaining for our consideration are the defective pleadings of count two which fall short of stating a cause of action. All defendants demurred to the second count for failure to state a cause of action; in addition, defendant United Multiple Listing Service, Inc., pointed out substantive defects. The trial court did not rule on the demurrers but instead granted defendants' motions for summary judgment.[10] We may consider these defects of substance for the first time on appeal. (*Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 710 [136 Cal.Rptr. 871]; see also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 808, pp. 2418-2419.)

Where the rule of reason applies, the plaintiff has the burden of proving that defendant's restrictive trade practices have substantial or serious anticompetitive effects within the relevant market. (*Tampa Electric Co. v. Nashville Co.* (1961) 365 U.S. 320, 333-334 [5 L.Ed.2d 580, 590 81 S.Ct. 623]; *Magnus Petroleum Co., Inc. v. Skelly Oil Co.* (7th Cir. 1979) 599 F.2d 196, 201-202.) Plaintiff must show the defen-

---

[8]Nor may plaintiff on remand rely on the same dicta and by different construction (i.e., "per capita cost of *services received by plaintiff*") interpret the fees in question to be per se an unreasonable restraint of trade.

[9]Defendants suggest in passing that the *Hounsell* decision (72 Cal.App.3d 210) interpreting *Palsson* (16 Cal.3d 920) was in error and the proper interpretation is that a board of realtors which offers board membership to brokers and salesmen on nondiscriminatory terms has no duty to provide MLS access to a person who is not a member of its board. They admit however that such issue was not raised below and is not before us on this appeal.

[10]The trial court apparently felt it was unnecessary to consider the demurrers since the summary judgments were dispositive.

dant's trade practices amount to monopolistic powers seriously hindering competitors. A showing of only individual detriment is insufficient as the purpose of antitrust laws is primarily to protect the consuming public by healthy competition, and only secondarily to protect the individual competitor. (See *Palsson, supra,* at p. 935.) Indeed, the *Palsson* and *Hounsell* courts were careful to analyze the impact of MLS access rules in terms of the percentage of real estate sold by use of the service. (*Palsson, supra,* at pp. 934-936; *Hounsell, supra,* at pp. 212-213.)

In contrast, the complaint here alleges only that the requirements for participation in the several listing services adversely affect plaintiff individually because he conducts a real estate business on a state-wide basis and cannot afford the participation fees of all the boards. Lacking are any material allegations to the effect that defendants' listing services amount to a monopoly or that a competitive market to which plaintiff belongs is seriously hampered by MLS participation requirements. Plaintiff's failure to allege any harm to the public constitutes a failure to state an antitrust cause of action. (See *Grempler* v. *Multiple Listing Bur. of Harford Co., Inc.* (1970) 258 Md. 419 [266 A.2d 1, 7, 45 A.L.R.3d 180].)

As summary judgment was improper, that judgment is reversed. As there are defects in the pleadings, we remand the case for the trial court to rule on the demurrers interposed and to exercise its discretion in determining whether or not to grant plaintiff leave to amend his second cause of action for a third time and for further proceedings consistent with this opinion.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied June 24, 1981, and the opinion was modified to read as printed above.